IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RICHARD DELON DAY, JR.,
ADC #88100                                                                                      PLAINTIFF

5:04CV00384WRW/HDY

CORRECTIONAL MEDICAL
SERVICES, INC., et al.                                                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.
2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at

1

the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

### DISPOSITION

A trial was held in this case before the Court on March 13, 2006. Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following findings and recommendation.

### I. Introduction

Plaintiff, a state inmate incarcerated at the East Arkansas Regional Unit (EARU) of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983, alleging a denial of adequate medical care by defendants while he was incarcerated at the North Central, Cummins, and Maximum Security Units of the ADC from 2002-2004. Plaintiff also alleges that defendants retaliated against him by denying him timely showers, by failing to re-classify him to a different job, and by filing a disciplinary charge against him. Specifically, plaintiff's medical claims concern defendants' care for an injured finger and for plaintiff's seasonal allergies. The medical defendants are Correctional Medical Services, Inc. (CMS), which is the medical care provider for the ADC; Dr. Ifediora, Paul Torrez, Charlotte Green, Lisa Anderson, and Dr. Roland Anderson. The ADC defendants are Capt. David Knot, Warden David White, Sgt. Emmitt Johnson, Sgt. Michael Odum, Major Apel, Adrian Brown, Tommy James, Larry May, and Lt. Moore.

Plaintiff requests monetary relief from the defendants.

## II. Factual Findings

### A. Medical Claims

1) Finger injury

Plaintiff, who has been incarcerated in the ADC since 1987, stated that in October, 2002, he hurt his ring finger on his right hand while playing football, and re-injured it about a month later when it got caught in his locker box. He visited the infirmary and claims that although the infirmary doctor requested a consultation by an outside orthopedic physician, defendant Dr. Roland Anderson "deferred", or cancelled the request. Plaintiff was later written a script for one-arm duty in July, 2003, but claims that defendant Idefiora cancelled that script in August, 2004, after plaintiff filed grievances against him. Plaintiff alleges that requiring him to work field utility duty with the hurt finger caused him pain and suffering. Plaintiff acknowledged that he continued to play basketball with the injury.

Dr. Anderson testified that as state medical director for CMS, he reviews medical requests and provides overall support to the medical care providers in the ADC. Although he never examined plaintiff, he reviewed the request for an orthopedic consult of plaintiff's finger in December, 2002. He stated that according to plaintiff's medical records (CMS Ex. 1), plaintiff slammed his ring finger in his locker box on November 22, 2002, and received treatment for that, with a followup visit on December 2, 2002. On January 1, 2003, Dr. Bentley (non-party) sent in a request for an orthopedic consult because of the continued swelling of the finger and plaintiff's statements of pain. Anderson reviewed the doctor's notations, together with results from an x-ray taken of plaintiff's finger, which was negative for a fracture and for soft-tissue abnormalities, and "deferred" the consult decision to Bentley. Anderson testified that a "deferral" was not a rejection or refusal of the request, but rather, was meant to send the decision back to the treating physician,

3

who knew more about the injury and the patient. At that point in time, Dr. Bentley scheduled plaintiff for a follow-up visit in February, 2003, at which time he received another x-ray. The results of the second x-ray indicated no fracture or other noticeable injury, and plaintiff was prescribed stretching exercises for his finger.

In August, 2003, plaintiff again returned to the infirmary because of his finger, at which time Dr. Shelatt (non-party) prescribed him anti-inflammatory medication, continued his script for one-arm duty, and requested an orthopedic consult. CMS Ex. 1, p. 23. Defendant Anderson's response to this request was to first have another doctor at the Unit examine plaintiff. On August 14, 2003, Dr. Olymofin, who was more experienced in orthopedics, examined plaintiff and noted that he did not have any swelling in his joint. Dr. Olymofin also recommended finger exercises and a follow-up visit. Following a review of Dr. Olymofin's notes, Dr. Anderson told Dr. Shelatt to follow his recommendations. Later, in July, 2004, defendant Ifediora made a referral for plaintiff to receive an orthopedic consult. Anderson reviewed this request, asked for more information, and then Dr. Ifediora withdrew the request. CMS Ex. 1, p. 36-38. Defendant Anderson did state that if plaintiff is still having swelling in his finger, he would recommend another x-ray and possibly an orthopedic consult.

Dr. Anderson also testified about CMS policy and stated that if a patient is seen a third time in the infirmary for the same complaint, that patient is automatically placed on a list to be seen by a doctor. He added that a nurse can refer a patient at any time to a doctor if he or she feels that they can not take care of a particular situation or illness.

Defendant Lisa Anderson, a licensed practical nurse at the Maximum Security Unit, testified that she knows the plaintiff, but does not remember seeing him for his finger injury.

Defendant Charlotte Green, a registered nurse and the health services administrator at the Max Unit, stated that she saw plaintiff in August, 2003 about his finger and placed him on a list to

be evaluated by a doctor. Plaintiff was seen the next day by another medical person who placed him on one-arm duty pending the doctor's report. CMS Ex. 1, p. 22. She also stated that after plaintiff's script for one-arm duty expired in August, 2004, he did not request renewal of that script.

Dr. Ifediora testified that the first time he examined plaintiff for his finger injury, in February, 2004, he issued plaintiff a script for one-arm duty due to plaintiff's complaints of pain. CMS Ex. 1, p. 31. He later saw plaintiff in April, 2004 and July, 2004 for the same complaints. He stated that when he saw plaintiff in July, he requested an orthopedic consult, but then also requested plaintiff's medical records from the University of Arkansas for Medical Sciences (UAMS). After reviewing those medical records, and after speaking on the telephone with an orthopedic surgeon about the possibility of surgery for the plaintiff, he concluded that the consult was not necessary, and withdrew the request. He stated that the surgeon indicated that surgery would not be an option. He did state that he continued plaintiff on one-arm duty until August, 2004. When plaintiff was seen by defendant on August 30, 2004, plaintiff did not request a renewal of the one-arm duty script. CMS Ex. 2, p. 17. In addition, on subsequent visits, plaintiff did not reference his finger problem to defendant. CMS Ex. 2, pp. 23, 24.

2) Allergies

Plaintiff testified that he suffers from seasonal allergies, during the spring and summer months, and that this has become worse over time. He alleged in his complaint that because he was required to work outside on field utility, he suffered from watery and itchy eyes, runny nose, and breathing problems. He said that he was examined by Dr. Ifediora in May, 2004, when he was taken to the infirmary for an emergency allergic reaction suffered while he was working field utility. He stated that Dr. Ifediora diagnosed him with severe grass allergies and gave him a two-day lay-in from work. Plaintiff also stated that he returned to the infirmary for sick call on May 19, 2004 and saw defendant Lisa Anderson, who told him to return when his symptoms were visible. Plaintiff

returned the next day and claims that Anderson ignored him and that defendant Green told him to wait and come back the next day when he already had a scheduled appointment.

On May 27, 2004, Dr. Ifediora issued plaintiff a script exempting him from field duty from March-October. However, the next day plaintiff was called into the infirmary and told by the doctor that the script was rescinded. Plaintiff claims that the doctor was influenced by defendants Green and Lisa Anderson to cancel the script because of grievances which plaintiff had filed against medical personnel. Plaintiff stated that after he started filing grievances on Dr. Ifediora in June, 2004, the doctor gave him the "cold shoulder." He admitted that the doctor prescribed him several medications for his allergies and also gave him a script to use a sling blade to help avoid grass clippings, but stated that none of this helped his situation.

Defendant Lisa Anderson testified that she saw plaintiff at sick call on May 19, 2004, at which time plaintiff did not present any signs or symptoms of allergies. According to CMS Ex. 2, pp. 2-4, Anderson noted that plaintiff was scheduled for a follow-up with the doctor the following week. She stated that she did not recall seeing plaintiff in the infirmary the next day or any time in which he exhibited any signs or symptoms of allergies, and that if she had, she would have referred him to the doctor and would have included a notation in her notes. Anderson denied trying to influence Dr. Ifediora concerning his treatment decisions.

Defendant Green stated that she also never saw signs or symptoms of allergies on plaintiff, even though he appeared in the infirmary for treatment of such. According to CMS Ex. 2, pp. 28-30, plaintiff was a no-show for his allergy medications on twelve occasions in May, 2004 and on nineteen occasions in June, 2004. Green also denied having any conversations with Dr. Ifediora with respect to his treatment decisions involving the plaintiff.

Dr. Ifediora testified that he first saw plaintiff for the allergy complaints on May 6, 2004, at which time plaintiff presented with redness on the inside of his eyelids. Defendant prescribed

6

an antihistamine based on plaintiff's subjective complaints, but saw no evidence of welts or hives on the plaintiff. With respect to his decision to cancel the script he wrote excusing plaintiff from field duty, defendant stated that he first wrote that script when plaintiff returned to the infirmary complaining that despite the medications which were prescribed to him, he was still suffering. At that time, defendant stated that he did not have the time to research plaintiff's records, so he gave plaintiff the benefit of the doubt. Later in the day, however, Dr. Ifediora obtained access to plaintiff's medication records and discovered that plaintiff had not been taking his medications on a regular basis. Based on that finding, and the fact that plaintiff did not present any symptoms other than redness of the eyes, Dr. Ifediora cancelled plaintiff's script and called him into the infirmary the next day to explain the situation. Dr. Ifediora also stated that plaintiff never presented any life-threatening symptoms such as breathing problems or bronchial restrictions. He also denied that his decision to cancel the script was influenced by other medical personnel.

**B. Grievance Issue**

Plaintiff testified that the grievances he filed against defendants Green and Anderson were mishandled, and instead of being forwarded to defendant Torrez, the CMS Regional Administrator, were answered by defendant Green. Plaintiff claims that this prevented him from pursuing his medical claims, and thus, from receiving appropriate medical care. Defendant Green acknowledged that at that time the person at the Infirmary who was responsible for processing the grievances was new, and was unaware that grievances against Green were to be forwarded to Torrez. Green stated that after she responded to the grievances, she forwarded them to Torrez for his review and then instructed the grievance person about the proper procedures to follow. Defendant Torrez also stated that he reviewed those grievances and found that they were responded to appropriately and also instructed defendant Green and her staff about the proper procedures. Torrez knew of no retaliation against plaintiff and also stated that he does not have any authority over decisions about

medical restrictions.

**C.  Showers**

Plaintiff alleged three different shower-related claims: 1) On March 17, 2004, plaintiff was in line for sick call, but was afraid that he would miss his shower time.  He asked defendant Odum if he could return to his barracks and shower, and then come back to the line.  Defendant Odum told him he was at his own risk.  Plaintiff stated that he was escorted to and from the shower by a guard, but that when he tried to return to the infirmary line, defendant Odum would not permit him.  Defendant White denied the grievance which plaintiff filed about this incident.   2) On March 31, 2004, plaintiff went to the law library before shower call but then got caught in the count.  After the count was over, shower time was over and defendant Knot would not permit him to take a shower.  Plaintiff claimed that he was covered with grass from his day out in the field, and that this exacerbated his allergy symptoms.  Plaintiff did admit that he has access to a sink , washcloth, and towel in his cell.  3) According to ADC policy, when an inmate is on a cell restriction, he is not permitted to take a shower until 10:30 p.m.  Plaintiff sued defendants White and Lay about this policy, stating that they knew that this resulted in plaintiff suffering from having grass all over his body, thus exacerbating his allergies.

**D.  Classification**

Plaintiff alleges that defendants Apel and James improperly denied his requests for a change in his job classification, despite knowing about plaintiff's suffering from allergies.  Plaintiff alleges that their decision was in retaliation for grievances plaintiff filed, but admitted in his grievance that at that time there were not enough jobs to go around.  See ADC Ex. 2.

**E. Retaliatory Discipline**

On July 7, 2004, plaintiff was charged with failure to obey an order of the staff when he refused defendant Brown's direct order to start raking grass.  Plaintiff states that he refused because

of his one-arm duty script, and alleges that this charge was filed against him in retaliation for grievances he filed against defendants Moore and Apel, and that these defendants somehow were responsible for the charge against him..

### III. Legal Conclusions

**A. Judgment as a Matter of Law**

At the close of plaintiff's case, I granted the ADC defendants' motion for judgment as a matter of law with respect to the following claims: 1) shower claim against defendant Odum; 2) shower claim against defendant Knot; and 3) retaliatory disciplinary claim against defendants Brown, Moore and Apel. In granting the motion with respect to defendant Odum, I found that plaintiff presented no evidence of a serious medical need on that occasion or that defendant Odum knew about that need and thereby denied plaintiff from receiving treatment. In addition, I granted the motion with respect to defendant Knot because plaintiff did not show how the denial of the shower on that one occasion violated his constitutional rights; plaintiff admitted that he had access to a sink, washcloth and towel, with which to wash off any grass that was causing him problems. Finally, plaintiff can not state a claim for retaliation if the disciplinary conviction itself was based on the violation of a prison rule and where the conviction is supported by "some evidence." See Cowans v. Warren, 150 F.3d 910, 912 (8th Cir. 1998), and Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994). In Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993), the Court held that "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." In this particular case, plaintiff admitted that he refused defendant Brown's direct order to rake, and therefore, I dismissed that claim against defendant Brown.

Similarly, at the close of defendants' evidence, I granted the ADC defendants' motion for judgment as a matter of law with respect to the following claims: 1) the classification committee

claim against defendants Apel and James; and 2) the shower claims against White and May. Again, I found no evidence of retaliation by Apel and James, given the evidence of the limitation of jobs and the lack of evidence of medical harm to the plaintiff (see further medical findings, below). I also found that plaintiff's allegation that his delayed showers caused him medical problems or exacerbated his medical condition was unsupported by the evidence (see further medical findings, below).

**B. Medical Claims**

In order to support an Eighth Amendment violation by defendants, plaintiff must show that they were deliberately indifferent to his serious medical needs. A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 832 (1994). This standard involves an objective component, which requires the deprivation to be sufficiently serious, and a subjective component, which requires that the defendant acts with a sufficiently culpable state of mind. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). In addition, an inmate complaining about the delay in medical treatment must place verifying medical evidence in the record to establish the detrimental effect of delay in treatment. See Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) and Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). Finally, a mere disagreement with the course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment. Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990). See also Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996), where the court held that prison doctors are free to exercise their independent medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."

1) Finger - The Court finds that plaintiff has presented no evidence that the medical defendants were deliberately indifferent to his finger injury. According to plaintiff's medical

records, he was examined on numerous occasions for the injury and received x-rays on several occasions. In addition, defendant Ifediora consulted both plaintiff's medical records and the opinion of an orthopedic specialist prior to deciding not to refer plaintiff to an outside orthopedic doctor. Defendant Dr. Anderson also testified that he did not deny a consult, but rather, referred the decision to the treating physicians, who were more familiar with the circumstances. Assuming that plaintiff's finger injury was a serious medical need, the Court finds that none of the defendants were deliberately indifferent to that need. Furthermore, plaintiff admitted that he did not attempt to renew his one-arm duty script after it expired in August, 2004, and that this finger injury did not prevent him from playing basketball.

2) Allergies - Plaintiff has provided no evidence of a serious medical need with respect to his allergies. Although plaintiff testified that he had breathing problems, watery eyes, and runny nose, his medical records do not support such testimony. Furthermore, plaintiff admitted that he did not consistently take the medicine which was prescribed to him. Dr. Ifediora's decision to change his mind and rescind the script which had taken plaintiff off of the field duty is supported by the evidence that plaintiff was not taking his medications and was not suffering from any life-threatening symptoms, such as breathing problems. In addition, such a decision was within Dr. Ifediora's free exercise of his medical judgment, and there is no evidence that plaintiff was denied medical care by any of the medical defendants. His medical records are replete with his visits to sick call and the doctor for his various ailments, together with numerous prescriptions for medications.

## C. Grievances

Failure to properly process a grievance does not, in and of itself, state a constitutional claim. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Furthermore, plaintiff's allegation that the failure to properly process the grievances somehow denied him appropriate medical care is also not

supported by the medical evidence, as noted above. Both defendants Green and Torrez testified that although the grievances were not immediately forwarded to Torrez, they were eventually reviewed by him and he found no wrongdoing by the medical staff.

### III. Conclusion

In conclusion, the Court finds that defendants should have judgment against plaintiff on his claims against them.   Accordingly,

IT IS, THEREFORE, RECOMMENDED that defendants have judgment against plaintiff and that this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED this  16   day of March,  2006.

_____
United States Magistrate Judge